OPINION
Appellant, Melissa Estep, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting Franklin County Children Services ("FCCS") permanent custody of appellant's son, Demetrius Estep.
FCCS first became involved with appellant's family when appellant failed to come to the hospital after her daughter, Crystal Estep, not involved in this appeal, overdosed on aspirin. Crystal was placed in a foster home in September 1998, at which time Demetrius also came into the temporary custody of FCCS when a caseworker noticed a scratch on his foot. He was ultimately placed under the care of Felicia Pullins, his foster mother.
Pursuant to R.C. 2151.414(B)(1)(d), FCCS on February 18, 2000, filed a motion for permanent custody. Demetrius' guardian ad litem supported FCCS' motion, presenting the court with his report that indicated permanent custody should be granted to FCCS. Following a hearing on May 22, 2000 to determine FCCS' permanent custody motion, the court on June 1, 2000, granted it. Appellant appeals, assigning the following errors:
 FIRST ASSIGNMENT OF ERROR: THE COURT ERRONEOUSLY SUSTAINED THE MOTION OF FRANKLIN COUNTY CHILDREN SERVICES SEEKING PERMANENT CUSTODY OF APPELLANT'S CHILD, TERMINATING PARENTAL RIGHTS AND PERMITTING THE CHILD TO BE PLACED FOR ADOPTION.
 SECOND ASSIGNMENT OF ERROR: PROCEEDINGS IN THE TRIAL COURT DID NOT COMPLY WITH DUE PROCESS OF OHIO LAW IN THAT (1) MOST OF THE HEARING WAS CONDUCTED IN THE ABSENCE OF THE GUARDIAN AD LITEM, (2) WHEN THE GUARDIAN DID APPEAR HE WAS IN EFFECT CALLED AS AN EXPERT WITNESS, (3) THE COURT DID NOT AFFORD COUNSEL THE OPPORTUNITY TO MAKE CLOSING STATEMENTS, AND (4) THE COURT APPLIED A SUPERSEDED VERSION OF THE STATUTE IN SETTING FORTH ITS CONCLUSIONS IN THE JUDGMENT ENTRY.
Appellant's first assignment of error contends the best interest of Demetrius dictate that he be placed with appellant or, in the alternative, remain in the temporary custody of FCCS. FCCS sought and obtained permanent custody of Demetrius pursuant to R.C. 2151.414(B), which states:
 (1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
In considering the trial court's decision to grant permanent custody to FCCS, this court must determine from the record whether the trial court had sufficient evidence to satisfy the clear and convincing standard. Clear and convincing evidence requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In the Matter of Coffman (Sept. 7, 2000), Franklin App. No. 99AP-1376, unreported, citing Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
FCCS sought permanent custody pursuant to R.C. 2151.414(B)(1)(d). According to that statutory provision, the trial court may grant permanent custody if the court determines by clear and convincing evidence that (1) it is in the best interest of the child, and (2) the child has been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment. While the parties agree that the second prong of the statutory test has been met, appellant contends the record does not support the trial court's conclusion that it was in the best interest of Demetrius to grant FCCS permanent custody.
In determining best interest, the trial court was required to consider all relevant factors including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. R.C. 2151.414(D).
Although the trial court decided the case under the former version of the statute, the court nonetheless made the required determination that it was in Demetrius' best interest to grant FCCS permanent custody. In reaching that conclusion, the trial court found "the parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so."
In reviewing the trial court's findings under the "best interest" factors of R.C. 2151.414(D), we note appellant had weekly supervised visitation scheduled with Demetrius at the FCCS offices. Although appellant was often fifteen minutes late for the visits, FCCS testified appellant substantially complied with her scheduled visitation.
Moreover, interaction between Demetrius and his mother during visitation was good much of the time. Demetrius was happy to see his mother most of the time, was very open about saying he loved his mother very much, and had bonded with his mother. Appellant sometimes brought snacks to visitation, and they often worked on homework. When, however, Demetrius and appellant would talk about past events leading to FCCS' temporary custody of Demetrius, tension would arise between them because Demetrius apparently felt his mother had not taken the necessary steps for him to return home. Nonetheless, even when appellant and Demetrius were frustrated with one another, they always ended the visits on a positive note, hugging each other. Given that the supervised office visits were somewhat less than a natural setting for normal interaction to occur between appellant and Demetrius, the record discloses substantial interaction between them. See In the Matter of Bender (Sept. 27, 1984), Franklin App. No. 83AP-919, unreported.
In addition to the office visits, appellant occasionally attended church services with Demetrius and his foster mother, occasionally communicated, and on other occasions attempted to communicate, with Demetrius at the foster home. Appellant thus also has shown commitment to her son.
Nonetheless, we recognize Demetrius has been in foster care since September 1998 and also has bonded with his foster mother. Although Demetrius recently has expressed his desire to be adopted, he had previously made known his wish to be with appellant. Demetrius' recent desire to be adopted appears to stem from frustration "[b]ecause he thinks his mom lies about things and has not been able to — do the things needed in order to get him home." (Tr. 33.) Because Demetrius clearly has a good relationship with his foster mother and thrives in her care, it is a factor to be considered. Nonetheless, the foster mother's better parenting skills do not necessarily mean appellant's are so inadequate that her relationship with her son should be permanently severed.
To the extent it is relevant under R.C. 2151.414(B)(1)(d), appellant apparently substantially complied with many aspects of her reunification plan which required her to (1) ensure that the basic needs of Demetrius were met, including maintaining stable housing and employment, (2) not only attend parenting classes, but demonstrate she benefited from the classes, (3) obtain individual counseling and family counseling for herself and the children, and (4) attend domestic violence counseling. Specifically, although the record reveals some equivocation regarding various aspects of the plan, appellant contends she performed most of the assigned tasks. FCCS acknowledges feedback from appellant reflecting some case plan activity and compliance, but suggests her verification is lacking. While the record does not reveal FCCS took steps to ascertain compliance, appellant nonetheless should supply the needed verification.
Appellant's most significant omission was her failure to attend counseling sessions. Although appellant was not told she had to attend a specified number of counseling sessions, she only attended three sessions. The problem appears to be logistical. Appellant was available for counseling on Fridays, and often requested Friday sessions. The counselor, however, was not available on Fridays. While the importance of the counseling sessions is evident, the record does not suggest that appellant was unwilling to attend so much as that appellant was not afforded many options despite her inability to attend the scheduled counseling sessions on any day except Friday. She was thus presented with a difficult choice: on one hand, FCCS required appellant to maintain stable employment, but on the other hand FCCS wanted her to attend counseling at times not compatible with her work schedule. Although the counselor assigned to appellant was not available for Friday counseling sessions, no other counselor was assigned to appellant's case, despite appellant's request for Friday sessions.
In addition, the guardian ad litem's report is not convincing. The guardian ad litem conducted one interview with appellant. One concern was appellant's failure to attend counseling. As noted, however, the evidence does not support that appellant was unwilling to attend counseling. In addition, although the guardian ad litem states that appellant's attendance at visitation with her son was irregular, FCCS found appellant to be in substantial compliance with her visitation. Moreover, as FCCS and the guardian ad litem both acknowledge, appellant attributes her tardiness to her inability to always leave work early. Finally, the report also states that appellant is unable to appreciate Demetrius' needs and therefore is unable to meet his basic needs. However, once appellant obtains counseling sessions that are compatible with her work schedule, those concerns should be addressed.
In the final analysis, the evidence demonstrates that Demetrius and appellant love one another and have a parent-child bond. "[T]he best interest of the child is to promote or maintain the natural family unit, unless there is absolutely no evidence of a true parent-child relationship and any ability to provide for the child's care in the future." In the Matter of Murphy (June 25, 1985), Franklin App. No. 84AP-698, unreported; see, also, In the Matter of Gibson (July 19, 1979), Franklin App. No. 78AP-856, unreported ("[W]here there is a true parent-child relationship and true love exchanged between the parent and child, permanent commitment is out of the question, even though the mother is unable to provide a proper home for her children"). The relationship between appellant and Demetrius precludes permanent commitment at this time. Bender, supra (stating "[t]hat love must have some bearing upon the parent's present or future ability to provide the statutory level of care for the child").
Indeed, the facts in Bender are more aggravated than here, but this court upheld the trial court's finding that permanent custody to FCCS was not in the best interest of the children. The parent in Bender did not give strong parental nurturing and care, he was unemployed at the time of the hearing, and despite the requirement of the case plan that he find other housing, he continued to live with his cousin that whipped one of the children with an electrical cord. Nonetheless, he showed an interest in the children's education by helping them with homework, and he attended seventy-four percent of the scheduled visits. While one of the children had been in foster care for eight years and did not want to be with his father, two other children wanted to be with him. The court held that despite his failure, there was obviously a high level of affection that made permanent custody with the agency improper.
While appellant may not currently be as good a parent as FCCS would like, permanent custody is premature at this juncture. To the extent temporary custody can be extended, that option may be the optimum solution for the present. In any event, given appellant's efforts with respect to Demetrius and the mutual affection they share, this record did not provide clear and convincing evidence that permanent custody with FCCS is in the best interest of Demetrius. Accordingly, appellant's first assignment of error is sustained, rendering moot her second assignment of error.
Having sustained appellant's first assignment of error, rendering her second assignment of error moot, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
Judgment reversed and case remanded.
BOWMAN and BROWN, JJ., concur.